UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:13-CV-7 CAS |
| HARRIS MEDICAL ASSOCIATES, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This declaratory judgment matter is before the Court on plaintiffs' Motion for Judgment on the Pleadings. Defendant St. Louis Heart Center, Inc. ("St. Louis Heart") opposes the motion, and its opposition is joined in by defendant Harris Medical Associates, LLC ("Harris Medical"). The motion is fully briefed and ready for decision. For the following reasons, the motion will be denied.

**Background**

Plaintiffs filed this action seeking a declaration that they have no duty to defend their insured Harris Medical for claims asserted in underlying litigation filed by St. Louis Heart. See St. Louis Heart Center, Inc. v. Harris Medical Center, Inc., No. 4:12-CV-1555 JCH (E.D. Mo.).[1] In the underlying litigation, St. Louis Heart asserted three causes of action arising from Harris Medical's alleged transmission of six unsolicited fax advertisements to St. Louis Heart in 2011: (1) violation of the Telephone Consumer Protection Act ("TCPA"); (2) conversion under Missouri common law; and (3) violation of the Missouri Consumer Fraud and Deceptive Business Practices Act. Plaintiffs

---

[1]The Court takes judicial notice of the file in the underlying litigation.

voluntarily dismissed the deceptive business practices claim, so the only remaining counts are for violations of the TCPA and common law conversion.

Plaintiffs are currently defending Harris Medical in the underlying litigation under a reservation of rights, and in this action seek a declaration of coverage under the following policies:

(1) Businessowners policy 7710 BO 8427593001, issued by Nationwide Mutual Insurance Company with effective dates February 13, 2007 to February 13, 2008 (the "Nationwide Policy");

(2) Premier Businessowners policies ACP BPOK 2302991511, ACP BPOK 2312991511 & ACP BPOK 2322991511, issued by Nationwide Property and Casualty Insurance Company with effective dates February 13, 2008 to February 13, 2009, February 13, 2009 to February 13, 2010, and February 13, 2010 through the policy's cancellation on March 13, 2010 (the "Nationwide Property Policies"); and

(3) Commercial Umbrella Liability Policy No. ACP CAF 2312991511, issued by Nationwide Mutual Fire Insurance Company with effective dates September 4, 2009 to February 13, 2010 (the "Nationwide Mutual Fire policy").

A. <u>The Nationwide and Nationwide Property Policies</u>

According to the complaint, the Nationwide and Nationwide Property Policies (collectively referred to as the "Primary Policies") were issued on a primary basis for successive periods that commenced February 13, 2007 and ended March 13, 2010. (Doc. 1, Exs. C-F). Each of the policies cover claims of "property damage" occurring during the policy period caused by an "occurrence," as well as "personal and advertising injury" caused by an "offense" committed during the policy period. (Doc. 1, Ex. C at 27; Ex. D at 49, 57; Ex. E at 48, 56; Ex. F at 47, 55.)

In the Primary Policies, "property damage" is defined in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." (Doc. 1, Ex. C at 39; Ex. D at 71; Ex. E at 70; Ex. F at 69.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1, Ex. C at 39; Ex. D at 70; Ex. E at 69; Ex. F at 68.)

2

Coverage for "property damage" is subject to exclusions including damage that is "expected or intended from the standpoint of the insured." (Doc. 1, Ex. C at 29; Ex. D at 50; Ex. E at 49; Ex. F at 48.)

In addition, the Primary Policies cover "personal injury" and "advertising injury" caused by an "offense" committed during the policy period. (Doc. 1, Ex. C at 27; Ex. D at 57; Ex. E at.56; Ex. F at 55.) In pertinent part, "offense" includes "oral or written publication of material that violates a person's right of privacy." (Doc. 1, Ex. C at 39; Ex. D at 70; Ex. E at 69; Ex. F at 68.)

By endorsement titled "Exclusion – Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information," the Primary Policies do not apply to "distribution of material in violation of statutes" and exclude coverage for "'bodily injury' or 'property damage' arising directly or indirectly out of any action or omission that violates or is alleged to violate:

> a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
> . . . .
> c. Any statute, ordinance or regulation, other than the TCPA . . . , that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

(Doc. 1, Ex. C at 26; Ex. D at 86; Ex. E at 85; Ex. F at 85.)

B. The Nationwide Mutual Fire Policy

According to the complaint, in addition to the Primary Policies, the Nationwide Mutual Fire Policy was issued on an umbrella basis for the period September 4, 2009 to February 13, 2010. (Doc. 1, Ex. G.) Coverage A of the umbrella policy covers "loss" in excess of the policy limits of "underlying insurance," so long as the injury or offense occurs during the policy period of the commercial umbrella liability policy. (Id. at 11.) "[L]oss" is defined in pertinent part as "those

3

sums actually paid in the settlement or satisfaction of a claim which the 'insured' is legally obligated to pay as damages because of injury or offense." (Id. at 16.) "Underlying insurance," according to the terms and definitions of the umbrella policy, refers to the Nationwide Property policy with a policy period of February 13, 2009 to February 13, 2010. (Id. at 6, 9, 16.)

Coverage B of the Nationwide Mutual Fire umbrella policy requires, in the first instance, that there is no coverage under the 2009 Nationwide Property policy. (Doc. 1, Ex. G at 11.) If there is no coverage under the 2009 Nationwide Property policy, Coverage B of the umbrella policy applies to "property damage" and "personal and advertising injury" that takes place during the policy period and is caused by an "occurrence." (Id.) The definitions of "property damage" and "personal and advertising injury" are the same as in the Primary Policies. (Id. at 13.) "[O]ccurrence" includes "a covered offense." (Id.)

Coverage is excluded in pertinent part for "bodily injury" or "property damage" that is "expected or intended from the standpoint of the 'insured.'" (Doc. 1, Ex. G at 15.) Similar but not identical to the Primary Policies, the Nationwide Mutual Fire umbrella policy has an endorsement titled "Exclusion – Violation of Consumer Protection Statutes," that excludes coverage for "'bodily injury', 'property damage', or 'personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA, or any "statute, ordinance or regulation . . . that addresses, prohibits or limits the electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information. (Id. at 31.)

**Legal Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, a party may move for judgment on the pleadings. This Court has previously stated that "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts

4

and the moving party is entitled to judgment as a matter of law." Ginsburg v. InBev NV/SA, 649 F.Supp.2d 943, 946 (E.D. Mo. 2009) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (quoted case omitted). Thus, a motion under Rule 12(c) is determined by the same standards that are applied to a motion under Rule 12(b)(6). Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted); see also United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011) ("When considering a Rule 12(c) dismissal, we must accept the facts as pled by the nonmovant[.]").[2]  The principle that a court must accept as true all of the allegations contained in a pleading is inapplicable to legal conclusions, however. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In considering a Rule 12(c) motion, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of

---

[2]Plaintiffs cite Ginsburg v. InBev NV/SA, 649 F.Supp.2d at 946, for the proposition that a court accepts the facts alleged in the complaint as true on a motion for judgment on the pleadings. This is incorrect where, as here, the plaintiff is moving for judgment on the pleadings. In Ginsburg, the defendant had moved for judgment on the pleadings, so it was proper for the Court to accept the facts alleged in the complaint as true for purposes of the motion for judgment on the pleadings.

public record. Porous Media, 186 F.3d at 1079. In this case, the policies at issue were attached to the complaint as exhibits.

**Discussion**

    A. Choice of Law

Federal jurisdiction of this case is based on diversity of citizenship, 28 U.S.C. § 1332(a). In diversity cases, the choice of law rules of the forum state determine which state's substantive law applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Missouri is the forum state. "Missouri courts apply the most significant relationship test as set forth in Restatement (Second) of Conflict of Laws Section 188 when resolving choice of law issues." Sturgeon v. Allied Professionals Ins. Co., 344 S.W.3d 205, 211 (Mo. Ct. App. 2011) (cited cases omitted).

> Section 188(2) identifies five potentially significant contacts to be considered in a contract case when determining which state has the most significant relationship to the transaction and parties: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Id., 344 S.W.3d at 211 (cited cases omitted). "Significantly, in an action between parties to an insurance contract, the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law." Id.

With respect to the relevant significant contacts, the pleadings and the briefing on plaintiffs' motion reveal only that Harris Medical is a citizen of Georgia and plaintiffs are citizens of Ohio. The pleadings do not include any factual assertions concerning the principal location of the insured risk. Plaintiffs make the conclusory assertion that under Missouri choice of law rules, their "coverage obligations will likely be determined under Georgia law as the place where the insured is located and the policies were issued." Pls.' Mem. Supp. at 7. Plaintiffs cite to both Georgia and

6

Missouri cases as supporting judgment in their favor, as well as cases from other jurisdictions. In opposing the motion, defendants assert that coverage exists under the laws of either Georgia or Missouri, and also cite cases from both jurisdictions in support of their position.

There are insufficient factual allegations in the record from which the Court can undertake a choice of law analysis. Although the parties do not appear to believe that the choice of law between that of Missouri and Georgia would make any difference for resolution of plaintiffs' motion, the Court disagrees with respect to issues concerning whether plaintiffs have a duty to defend the common law conversion claim, as discussed more fully below.

B.  Legal Standards Regarding Duty to Defend

Under both Georgia and Missouri law, an insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. See Garland, Samuel & Loeb, P.C. v. American Safety Cas. Ins. Co., 651 S.E.2d 177, 179 (Ga. Ct. App. 2007); McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc). In Georgia, "To excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." Penn-America Ins. Co. v. Disabled American Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997) (internal punctuation and quoted source omitted). In Missouri, "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." McCormack, 989 S.W.2d at 170-71. "To extricate itself from a duty to defend the insured, the insurance company must prove that *there is no possibility of coverage*." The Renco Group, Inc. v. Certain Underwriters at Lloyd's, London, 362 S.W.3d 472, 479 (Mo. Ct. App. 2012).

7

Both states require an insurer to provide a defense if any potentially covered claims exist. Under Georgia law, "[I]f the facts bring the occurrence wholly, partially, or even arguably within the policies' coverage, then each insurer (whether primary or otherwise) has a duty to defend the action, regardless of whether liability, in whatever amount, is ultimately established." Capital Ford Truck Sales, Inc. v. U.S. Fire Ins. Co., Inc., 349 S.E.2d 201, 206 (Ga. Ct. App. 1986), rev'd on other grounds, 355 S.E.2d 428 (Ga. 1987). Missouri law is similar: "The presence of some insured claims in the underlying petition gives rise to a duty to defend, even though uninsured claims or claims beyond coverage may also be present." Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 47 (Mo. Ct. App. 1998) (quoting Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 534 (Mo. Ct. App. 1996)).

Under both Georgia and Missouri law, the interpretation of an insurance policy is ordinarily a question of law for the court. Maxum Indem. Co. v. Jimenez, 734 S.E.2d 499, 501 (Ga. Ct. App. 2012); McCormack, 989 S.W.2d at 171. If the policy language is clear, it will be enforced according to its terms. Longstreet v. Decker, 717 S.E.2d 513, 516 (Ga. Ct. App. 2011). "[N]o construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." Id. Similarly, under Missouri law, "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., Ltd., 827 S.W.2d 208, 210 (Mo. 1992) (en banc) (citations omitted).

Both states apply comparable standards to policy exclusions. "In Georgia, the insurer bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy. And when construction of a policy is required, exclusions must be construed against the insurer and in favor of the insured." Connell v. Guarantee Trust Life Ins. Co., 541 S.E.2d 403, 406 (Ga. Ct. App. 2000) (internal citation omitted). "Missouri . . . strictly construes exclusionary clauses against

8

the drafter, who also bears the burden of showing the exclusion applies." Burns v. Smith, 303 S.W.3d 505, 509-10 (Mo. 2010) (en banc).  "Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import." Aetna Cas. & Sur. Co. v. Haas, 422 S.W.2d 316, 321 (Mo. 1968).

With these principles in mind, the Court must determine whether plaintiffs have a duty to defend Harris Medical on the TCPA and common law conversion claims in the underlying litigation.

    C.  Policy Exclusion

        1.  TCPA Claims

As discussed above in the Background section, the policies at issue in this case include an endorsement titled either "Exclusion – Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information," or "Exclusion – Violation of Consumer Protection Statutes," that the Court will refer to collectively as the "Violation of Statutes Exclusion." Both exclusions include a subheading titled either, "DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES" or "DISTRIBUTION OF MATERIAL IN VIOLATION OF CONSUMER PROTECTION STATUTES," and state in pertinent part that coverage is excluded for claims "arising directly or indirectly out of any action or omission that violates or is alleged to violate:  a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law."

The language of the Violation of Statutes Exclusion is clear and unambiguous to the extent it excludes coverage for claims based on alleged violations of the TCPA, and therefore must be enforced as written. See Adams v. Atlanta Cas. Co., 509 S.E.2d 66, 68 (Ga. 1998) ("Although ambiguous exclusions may be construed liberally in favor of the insured and strictly construed against the insurer, this cannot be done when the exclusion is clear and unequivocal."); Rice v. Fire

9

Ins. Exchange, 946 S.W.2d 40, 44 (Mo. Ct. App. 1997) ("Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of the policy."). In the underlying litigation, Harris Medical's actions are alleged to have violated the TCPA. As a result, plaintiffs have met their burden to establish that the TCPA claims against Harris Medical are not covered by the substantive terms of the policies. As a result, there is no potential coverage under the policies for the TCPA claims.

The duty to defend exists under both Georgia and Missouri law, however, if any arguably insured claim is present in the underlying complaint. Capital Ford, 349 S.E.2d at 206; Wood, 980 S.W.2d at 47. As a result, the Court must also determine whether the policies potentially cover the conversion claims against Harris Medical in the underlying litigation.

### 2. Conversion Claims

The plaintiffs contend that the Violation of Statutes Exclusion bars coverage for the common law conversion claims against Harris Medical in the underlying litigation as a matter of law. Plaintiffs note that the plain language of the exclusion precludes coverage for any claims "arising directly or indirectly out of any act or omission that violates or is alleged to violate" the TCPA, or any law "that addresses, prohibits or limits the [electronic][3] printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information." Plaintiffs assert that both types of liability claims in the underlying litigation–violation of the TCPA and common law conversion–arise from the same conduct: the alleged transmission of the same unsolicited facsimile advertisements. Plaintiffs argue that because the conversion claims arise "directly or

---

[3]The word "electronic" does not appear in the Violation of Statutes Exclusion in the Primary Policies, but does appear in the National Mutual Fire umbrella policy.

10

indirectly out of any act or omission that is alleged to violate" the TCPA, coverage for those claims is barred by the exclusion.

In support of their argument, plaintiffs cite unpublished decisions from the Michigan Court of Appeals applying Illinois law, <u>GM Sign, Inc. v. Auto-Owners Insurance Co.</u>, 2012 WL 4840592 (Mich. Ct. App. Oct. 11, 2012); and the Washington Court of Appeals applying Washington law, <u>Oregon Mutual Insurance Co. v. Rain City Pizza, L.L.C.</u>, 2013 WL 150173 (Wash Ct. App. Jan. 14, 2013). <u>GM Sign</u> held that a similar exclusion barred coverage for a conversion claim because the acts alleged to constitute a TCPA violation were identical to those alleged to constitute a conversion claim, and the court concluded the common law tort therefore arose directly out of an act that was alleged to violate the TCPA. <u>Id.</u> at *4. <u>Oregon Mutual</u> held that a similar exclusion acted to bar coverage for any acts that violate statutes, including those committed by someone other than the insured. <u>Id.</u> at *3.

St. Louis Heart responds that junk fax claims are potentially covered under both the "advertising injury" and "personal advertising injury" provisions in the policies. St. Louis Heart argues that plaintiffs' policies cover every publication of material that violates a person's right to privacy. It also argues that there is potential for coverage under the policies' "property damage" coverage, citing an Eighth Circuit Court of Appeals decision under Missouri law that junk fax claims cause property damage potentially not expected or intended, and noting that under both Georgia and Missouri law, the term "accident" for purposes of property damage coverage includes injuries resulting from negligence, and the issue to be determined is whether the <u>injury</u> was expected or intended, not whether the acts were performed intentionally.

St. Louis Heart further responds that the Violation of Statutes Exclusion on its face applies to "distribution of material in violation of statutes," and specifically to property damage and

personal or advertising injury arising directly or indirectly out of an act or omission that violates or is alleged to violate the TCPA or "Any statute, ordinance or regulation other than the TCPA . . . that prohibits or limits the sending, transmitting, communicating or distributing of material or information." St. Louis Heart argues that even if its TCPA claim is barred, the exclusion by its terms applies only to the violation of statutes, does not unambiguously reach claims based on an alleged violation of the common law, and must be construed narrowly. In support, St. Louis Heart cites a number of unpublished decisions from the Lake and Cook County, Illinois circuit courts holding that a similar Violation of Statutes exclusion does not preclude coverage for claims that are not based on statutory violations, even though the claims are based on the same underlying conduct.

St. Louis Heart also argues that the conversion claim is cognizable and independently sufficient even if there was no TCPA claim, and seeks damages that are independent of the TCPA claim, so it does not arise out of the TCPA. It points out that the elements of a TCPA claim and a conversion claim are different, as a TCPA claim requires (1) sending a facsimile (2) that is an advertisement (3) without prior express consent by the recipient, 47 U.S.C. § 227, but does not require proof that the plaintiff received the facsimile. In contrast, a conversion claim based on an unwanted fax does not depend on whether the message was an advertisement, or whether there was an established business relationship between the sender and recipient, but does require that control was actually assumed over a plaintiff's property. St. Louis Heart reasons that while the conversion claim is based on one fact common to the TCPA claim–that Harris Medical sent a fax to it–the claims are otherwise premised on different elements.

St. Louis Heart also argues that plaintiffs could have excluded conversion or other common law claims, but did not do so. It states that other insurance companies have used broader exclusionary endorsement language that applies to any "unsolicited communications," rather than

12

the more narrow language in plaintiffs' policies that applies to the "violation of statutes" and "distribution of material in violation of statutes." St. Louis Heart contends that the broader language makes it clear that all claims based on unsolicited communications are excluded, regardless of whether they are based on a statutory violation or not, while the narrower language present in plaintiffs' policies is limited to claims based on unsolicited communications that violate statutes.

Neither party has cited a decision from either the Georgia or Missouri courts that interprets and applies a violation of statutes exclusion, much less a junk fax decision that is directly on point. Instead, both sides rely primarily on cases interpreting violation of statutes exclusions under Illinois law.  Under the Erie doctrine,[4] federal courts are bound by the decisions of a state's highest court regarding issues of substantive state law.  Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005).  If the supreme court of a state has not addressed a particular issue, federal courts "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data."  Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005) (citation omitted).

Because the parties have not cited decisions from the courts of Georgia or Missouri that interpret violation of statutes exclusions, it appears the Court may be required to determine in the first instance how the courts of the state whose substantive law controls would interpret and apply such an exclusion in this case.  To do so, the Court must be provided with facts relevant to the significant contacts for choice of law analysis, so it can determine which state's substantive law controls interpretation of the policies.  Only then will it be able to interpret and apply state law to the issues of potential coverage.  For now, the Court is mindful that under the laws of both Georgia

---

[4] Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

13

and Missouri, the insurer bears the burden to show that a policy exclusion applies, and exclusions are to be construed against the insurer and in favor of the insured. Under these circumstances, the Court concludes plaintiffs have not established that there is no potential for coverage for the underlying conversation claim based on the Violation of Statutes exclusion.

D. Conduct Outside of Policy Periods

In the alternative, plaintiffs argue they are entitled to judgment on the pleadings because the six faxes that triggered the underlying litigation were sent after the periods of coverage ended under all of the policies. Plaintiffs state that its policies were in effect from February 13, 2007 to March 13, 2010, and the petition in the underlying litigation alleges that the faxes were transmitted in 2011.

Plaintiffs' argument fails to acknowledge that the underlying litigation is a putative class action in which St. Louis Heart seeks to assert the conversion count on behalf of the following class of persons: "All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation." Class Action Pet. at 11, ¶ 48 (Doc. 5 in Case No. 4:12-CV-1555 JCH). The underlying litigation was filed on August 28, 2012, so if a class is certified as proposed, Harris Medical could potentially be liable for other unsolicited faxes sent on or after August 28, 2007, which would be within the policy periods. As a result, plaintiffs have not established they are entitled to judgment as a matter of law based on the alleged acts of conversion occurring after coverage ended.[5]

---

[5]The Amended Case Management Order in Case No. 4:12-CV-1555 JCH (Doc. 28), provides that St. Louis Heart's motion for class certification is due September 30, 2013. A class certification hearing is scheduled for December 2, 2013. If the Court refuses to certify a class in the underlying litigation, plaintiffs' argument would seem to have merit.

E.  "Property Damage" Arising Out of an "Occurrence"

Finally, plaintiffs assert they are entitled to judgment on the pleadings because there is an absence of coverage for "property damage." Plaintiffs state that under the policies, property damage must have been caused by an "occurrence," which is defined as an "accident," meaning an "unexpected happening rather than one occurring through intention or design." Pls.' Mem. Supp. at 12-13. Plaintiffs argue that because the transmission of a fax is not an "unexpected happening," St. Louis Heart's alleged damages could not have been caused by an "accident." Plaintiffs cite cases from Illinois, California and Massachusetts that they assert have reasoned property damage coverage does not apply in similar cases because the senders of the faxes anticipate that the recipients' paper and toner will be used upon receipt of the faxes. Plaintiffs also assert they are entitled to judgment because the policies exclude coverage for property damage that is "expected or intended from the standpoint of the insured," and cases from various jurisdictions have held that in sending a fax, the use of paper and ink was both expected and intended.

St. Louis Heart responds that its Petition in the underlying litigation alleges that Harris Medical "knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization," Petition at 13, ¶ 55, and thus alleges potentially negligent conduct.[6] St. Louis Heart cites an Illinois case in which similar allegations of potentially negligent conduct triggered the duty to defend under property damage coverage, because the focus of the

---

[6]The Class Action Petition also alleges that Harris Medical sent the faxes "believing such transmissions were legal based on [its] own understanding of the law and/or based on the representations of others on which [it] reasonably relied," Pet. at 5, ¶ 25; "did not intend to send transmissions . . . to any person where such transmission was not authorized by law or by the recipient . . .," id., ¶ 26; and "failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission" of the faxes. Id., ¶ 27. These allegations plead negligent rather than intentional conduct.

15

inquiry in determining whether an occurrence is an accident is whether the injury is expected or intended by the insured, not whether the acts were performed intentionally.  See Insurance Corp. of Hanover v. Shelborne Assocs., 905 N.E.2d 976, 801 (Ill. Ct. App. 2009).

The Court notes that after the parties' briefs were filed, the Missouri Supreme Court stated that "the applicability of insurance coverage in a TCPA junk-faxes case requires consideration of whether the insured junk-fax sender intended to cause harm." Columbia Cas. Co. v. HIAR Holding, L.L.C., No. SC 93026, __ S.W.3d __, 2013 WL 4080770, at *8 (Mo. Aug. 13, 2013) (en banc).  The court held that because the trial court determined the insured's actions in violating the TCPA reflected negligent conduct, it properly rejected the insurer's contention that its "property damage" coverage was inapplicable on the basis that the insured intended to send the faxes that resulted in the TCPA violations.  Id.  The court observed, "Nothing in the record supports a contention that [insured] sent the faxes intending to injure the recipients or violate the TCPA."  Id.

If Missouri law applies to this case, judgment on the pleadings should be denied based on the holding in Columbia Casualty, because St. Louis Heart has alleged potentially negligent conduct by Harris Medical in sending the faxes.  If Georgia law applies instead, plaintiffs have failed to provide the Court with adequate citation to Georgia decisions that support their right to judgment on the pleadings based on the inapplicability of "property damage" coverage.

**Conclusion**

For the foregoing reasons, plaintiffs' motion for judgment on the pleadings should be denied.  As a result, it is not necessary for the Court to address plaintiffs' arguments concerning St. Louis Heart's affirmative defenses.  Any future dispositive motion filed in this case by either party must provide sufficient facts to permit the Court to determine which state's substantive law applies, and include citation to relevant authority from that state's case law to support the party's position.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Judgment on the Pleadings is **DENIED**.  [Doc. 35]

                                                        **CHARLES A. SHAW**
                                                        **UNITED STATES DISTRICT JUDGE**

Dated this   23rd   day of September, 2013.